WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Julien Jesus Flores,

            Petitioner,

v.

Charles Ryan, et al.,

            Respondents.

No. CV-15-00070-TUC-RM

**ORDER**

On February 19, 2015, Petitioner Jesus Flores filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition"). (Doc. 1.) Respondents filed a Limited Answer on July 13, 2015. (Doc. 14.) Petitioner filed a Reply on August 20, 2015. (Doc. 15.) This Court referred the matter to Magistrate Judge Eric J. Markovich for a Report and Recommendation (Doc. 6 at 3),[1] but it later withdrew the reference (Doc. 20).

## I.    Factual and Procedural Background

In Pima County Superior Court case number CR 20121522, Petitioner pled guilty to illegal control of an enterprise, money laundering, conspiracy to possess marijuana for sale, conspiracy to possess narcotic drugs for sale, conspiracy to possess dangerous drugs for sale, use of an electronic communication in a drug-related transaction, possession of a

---

[1]    Record citations refer to the page numbers generated by the Court's electronic filing system.

deadly weapon by a prohibited possessor, and forgery. (Doc. 1-1 at 3-4.)[2] As part of his plea agreement, Petitioner agreed to cooperate in the prosecution of two cases, and the State agreed to advise the sentencing court "of the nature, extent, and value" of Petitioner's cooperation. (*Id.* at 6.) The written plea agreement includes a provision stating that Petitioner agreed he was giving "up any motions, defenses or other matters which have been or could be asserted in this case regardless of their merit." (*Id.* at 9.)

The Honorable Michael O. Miller held a change of plea hearing on October 29, 2012. (Doc. 1-1 at 12.)[3] During the hearing, Judge Miller informed Petitioner that, by entering into the plea agreement, he was agreeing to a prison range of 10.5 to 18 years. (*Id.* at 17.) He explained that the State had agreed that the sentencing court could "consider [Petitioner's cooperation] as a mitigating factor," but that only the sentencing court could "determine whether something is a mitigating factor and should result in a lesser sentence" under the plea agreement. (*Id.* at 24.) Petitioner inquired as to what would happen if the State "didn't meet up to their end of the agreement," and Judge Miller indicated that Petitioner could move to withdraw from the plea agreement under those circumstances. (*Id.* at 25-26.) Judge Miller then asked Petitioner if anyone had made him any threats or promises to get him to enter into the plea agreement. (*Id.* at 29.) Petitioner responded: "Not threats. I mean not promise. But like we had discussed about mitigating—asking for the least sentence for testifying." (*Id.*) Judge Miller stated that he understood, and then asked if anyone had made Petitioner promises not contained in the plea agreement. (*Id.*) Petitioner responded "No." (*Id.*) Judge Miller found that the plea was entered into knowingly, intelligently, and voluntarily. (*Id.* at 39.)

Prior to Petitioner's sentencing hearing, the Supreme Court issued *Florida v. Jardines*, 569 U.S. 1 (2013), which holds that a trained police dog's investigation of the

---

[2] Petitioner submitted an unsigned copy of a plea agreement as an exhibit to his § 2254 Petition. (Doc. 1-1 at 3-11.) Although the plea agreement is unsigned, there appears to be no dispute that it is the plea agreement entered into by Petitioner.

[3] Petitioner submitted a copy of the transcript of the change of plea hearing as an exhibit to his § 2254 Petition. (Doc. 1-1 at 12-40.) Respondents do not dispute the accuracy or completeness of the transcript. (*See* Doc. 14 at 2.)

curtilage of a home is a search within the meaning of the Fourth Amendment. The results of a narcotic detection canine's warrantless investigation of the curtilage of Petitioner's residence were used to obtain a search warrant for the residence. (*See* Doc. 1-1 at 54-57.) Evidence obtained during execution of the search warrant appears to have formed the basis of the charges against Petitioner. Accordingly, Petitioner advised his trial attorney, Brick Storts, that he wished to withdraw from his plea agreement and move to suppress evidence based on *Jardines*. Mr. Storts moved to continue Petitioner's sentencing hearing on the grounds that he needed additional time to determine whether it would be appropriate to move to withdraw from the plea agreement based on *Jardines*. (Doc. 1-1 at 1-2.) The State opposed the Motion to Continue, arguing that a plea agreement properly entered into should not be set aside because of changes in the law occurring after the plea. (Doc. 1-1 at 75-77.) It appears that the Motion to Continue was denied, although neither party has submitted a copy of the trial court's ruling on the Motion. Mr. Storts never filed a motion to withdraw plea or a motion to suppress evidence.

Petitioner's sentencing hearing was held before the Honorable Scott H. Rash. The record contains only a partial transcript of the hearing. (Doc. 1-1 at 41-53; Doc. 14-1 at 20-32.) The partial transcript does not reflect any discussion of *Jardines*, but it does show that, during his sentencing hearing, Petitioner explained to Judge Rash that, when he entered into his plea agreement, his understanding was that the State had promised to request that he receive the mitigated prison sentence of 10.5 years. (Doc. 1-1 at 43-47.) Petitioner averred that he would not have entered into the plea agreement if not for his understanding that the State would request the mitigated sentence. (*Id.* at 44, 51.) The prosecutor responded that he had never promised to make a specific sentencing recommendation and that, if he had, it would be written in the plea agreement. (*Id.* at 48-49.) The prosecutor further stated that he had never intended to foreclose his ability to argue that Petitioner deserved an aggravated sentence of 18 years—which is apparently what he did, although the portion of the transcript containing the prosecutor's sentencing recommendation does not appear in the record before this Court. (*Id.* at 49.) Defense

attorney Storts stated that the prosecutor had told him "he would not be opposed to the concept of a recommendation of a sentence" of 10.5 years, but that the prosecutor had not promised to request such a sentence. (*Id.* at 49-50.) Judge Rash asked Petitioner if he wished to withdraw from his plea agreement, and Petitioner stated that he did. (*Id.* at 51-52.) The prosecutor argued that there was no basis to continue Petitioner's sentencing hearing because a motion to withdraw from the plea agreement would be baseless. (*Id.* at 52.) Judge Rash then proceeded to sentence Petitioner. (*Id.* at 52-53.) Judge Rash found in aggravation that Petitioner's crimes were done for pecuniary gain and in the presence of accomplices. (*Id.*) He found that Petitioner's cooperation, remorse, and acceptance of responsibility were mitigating factors. (*Id.* at 53.) He sentenced Petitioner to the presumptive terms on each count, with the longest term being 15.75 years, and with all sentences running concurrent. (*Id.*)

Petitioner, through post-conviction attorney Anne Elsberry, filed his of-right Rule 32 Petition for Post-Conviction Relief ("PCR Petition") on December 18, 2013. (Doc. 14-1 at 2-11.) In the PCR Petition, Petitioner argued that his entry into the plea agreement that resolved his case was not knowing, intelligent, and voluntary, because at the time he entered into the plea he had been told by the prosecutor and his attorney that the State would support the mitigated sentence of 10.5 years, but that the State at sentencing requested the aggravated sentence of 18 years. (*Id.* at 2, 4-6.) Petitioner argued that he should have been allowed to withdraw from his plea agreement when the State breached its promise to request the mitigated sentence. (*Id.* at 7.) Petitioner also argued that trial counsel was ineffective in failing to file a motion to suppress and failing to request that Petitioner be allowed to withdraw from his plea agreement based on *Jardines*. (*Id.* at 2-4, 7-10.) The State responded on January 3, 2014. (*Id.* at 13-19.)

On January 8, 2014, Petitioner filed a pro se Motion to Supplement his PCR Petition. (Doc. 1-1 at 78-80.) In the Motion, Petitioner argued that: (1) his conviction was obtained in violation of his Fourth Amendment rights because the fruit of an illegal search was used to obtain a search warrant of his residence; (2) trial counsel rendered

ineffective assistance in violation of Petitioner's Sixth Amendment rights by failing to file a motion to suppress both before and after the Supreme Court's ruling in *Jardines*; (3) trial counsel rendered ineffective assistance by telling Petitioner that the State had agreed to request a minimum sentence of 10.5 years; (4) Petitioner did not enter into his plea agreement knowingly, intelligently, and voluntarily; (5) the plea agreement was induced by the State's promise to request the minimum sentence of 10.5 years; (6) the plea agreement was induced by the State's use of illegally obtained evidence; and (7) the Supreme Court recognized a new constitutional principle and significantly changed the law when it rendered its decision in *Jardines*. (*Id.* at 79-80.) On February 11, 2014, Petitioner filed a Pro Se Supplement to the PCR Petition, in which he elaborated upon the arguments contained in his Motion to Supplement. (*See* Doc. 14-1 at 34-38.) Neither party submitted a copy of the trial court's ruling on Petitioner's Motion to Supplement, but the ruling on the PCR Petition indicates that the trial court denied leave to file a pro se Reply but nevertheless reviewed Petitioner's pro se Reply. (Doc. 1-1 at 81 n.1.)[4]

Judge Rash dismissed Petitioner's PCR Petition on February 14, 2014. (Doc. 1-1 at 81-82.) He found that the record did not support Petitioner's argument that the State had agreed to recommend a mitigated sentence. (*Id.* at 81.) Judge Rash noted that, at his change of plea hearing, Petitioner stated that no one had made him any promises that were not contained in the plea agreement. (*Id.*) Judge Rash further noted that, even if the State had recommended a mitigated sentence of 10.5 years, the court would not have imposed it based on the contents of the presentence report. (*Id.*) With respect to Petitioner's ineffective assistance of counsel argument, Judge Rash found that, by entering into his plea agreement, Petitioner expressly waived any right to raise all motions, defenses, and objections that he had asserted or could assert. (*Id.* at 82.) Judge Rash further found that a plea agreement should not be set aside because of changes in the law occurring after the plea. (*Id.*) Accordingly, Judge Rash held that trial counsel's

---

[4]    Based on the record before this Court, it appears that the pro se Reply referred to by the trial court is the Pro Se Supplement to PCR Petition dated February 11, 2014.

- 5 -

decision to not file a motion to suppress and to not move to withdraw from the plea did not fall below an objective standard of reasonableness. (*Id.*)

A paralegal to Petitioner's PCR attorney sent Petitioner a letter dated May 30, 2014. (Doc. 14-2 at 27; Doc. 15 at 16.) The letter indicates that a copy of the trial court's PCR ruling is enclosed, and then states:

> I apologize for the delay in getting this to you; however, we did not receive a copy of the Ruling from the court back in February. We did not receive this until today after I called the court to check on the status of the ruling.

(Doc. 14-2 at 27; Doc. 15 at 16.)

On June 11, 2014, Petitioner filed a pro se Motion requesting permission to file a Petition for Review of the PCR ruling. (Doc. 14-2 at 29-30.) In the Motion, Petitioner stated that he received his PCR counsel's letter containing a copy of the PCR ruling on June 1, 2014. (*Id.* at 29.)[5] After summarizing the contents of the letter, Petitioner requested that the court toll the 30-day deadline for filing a Petition for Review so that the period for seeking review would commence on the date that Petitioner received notice of the PCR ruling. (*Id.* at 30.) On June 16, 2014, Judge Rash denied the Motion, without explanation and without citation to facts or authority. (*Id.* at 32.)

On July 14, 2014, Petitioner filed a pro se Petition for Review (Doc. 14-2 at 2-25) and a pro se Motion to Extend Time to File a Petition for Review (*id.* at 34-36) in the Arizona Court of Appeals. In the Petition for Review, Petitioner raised substantially the same arguments that he raised in his PCR Petition and pro se supplemental filings. In the Motion to Extend Time, Petitioner asked the Court of Appeals to accept his Petition for Review and argued that his delay in filing the Petition was not due to his own neglect but, rather, due to the trial court's delay in sending a copy of its PCR ruling to Petitioner and his PCR attorney. (*Id.* at 34-36.) On July 23, 2014, the Arizona Court of Appeals summarily dismissed the Petition for Review after holding—without explanation or citation to authority—that it was without jurisdiction to rule on the Motion to Extend

---

[5] In his Reply to Respondent's Limited Answer to his § 2254 Petition, Petitioner avers that he received the letter on June 2, 2014. (Doc. 15 at 4.)

- 6 -

Time. (*Id.* at 38.)

Petitioner filed the pending § 2254 Petition on February 19, 2015. (Doc. 1.) In the Petition, Petitioner raises the following claims: (1) trial counsel was ineffective in (a) providing Petitioner with erroneous advice regarding the effects of his plea agreement, and (b) failing to move to withdraw from the plea agreement after the Supreme Court issued *Jardines*; (2) the State violated the terms of Petitioner's plea agreement by failing to request a mitigated sentence based on Petitioner's cooperation in two cases;[6] (3) Petitioner should have been allowed to withdraw from his plea agreement and file a motion to suppress based on *Jardines*. (Doc. 1 at 6-16.)

## II.     Legal Standard

Because Petitioner's § 2254 Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this case is governed by AEDPA. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001).

A § 2254 petition subject to AEDPA cannot be granted unless it appears that (1) the petitioner has exhausted all available state-court remedies, (2) there is an absence of available state corrective process, or (3) state corrective process is ineffective to protect the rights of the petitioner. *See* 28 U.S.C. § 2254(b)(1); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust state-court remedies, the petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). In Arizona, a defendant who pleads guilty in a non-capital case waives his right to a direct appeal, and Rule 32 proceedings become the sole available avenue for exercising the defendant's constitutional right to appellate review. *Arizona v. Pruett*, 912 P.2d 1357, 1359-60 (Ariz. App. 1995); *see also* Ariz. R. Crim. P. 32.1. In cases not carrying a life sentence or the death penalty, "claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona

---

[6]     In this claim, Petitioner also argues that he would not have entered the plea agreement if not for his understanding that the prosecution had promised to request a mitigated sentence, and that he should have been allowed to withdraw from the plea agreement when the prosecution failed to fulfill that promise. (Doc. 1 at 11.)

Court of Appeals has ruled on them." *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999) (per curiam).

A claim is fairly presented if the petitioner has described the operative facts and the federal legal theory on which the claim is based. *See Picard v. Connor*, 404 U.S. 270, 277-78 (1971). A petitioner must make the federal basis of the claim explicit by citing specific provisions of federal law or federal case law or by citing state cases that explicitly analyze the same federal constitutional claim. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003); *Gatlin v. Madding*, 189 F.3d 882, 887-88 (9th Cir. 1999).

A claim is considered procedurally defaulted and thus precluded from federal review if (1) the claim was not presented in state court and no state remedies are currently available because the court to which the petitioner would be required to present the claim in order to meet the exhaustion requirement would find the claims procedurally barred under state law, or (2) the petitioner raised the claim in state court but the state court rejected the claim based on "independent" and "adequate" state procedural grounds. *See Coleman*, 501 U.S. at 729-32, 735 n.1; *see also Beard v. Kindler*, 558 U.S. 53, 55 (2009). "For a state procedural rule to be independent, the state law basis for the decision must not be interwoven with federal law." *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003) (internal quotation marks omitted); *see also Stewart v. Smith*, 536 U.S. 856, 860 (2002) (per curiam). "To be deemed adequate, the state law ground for decision must be well-established and consistently applied." *Bennett*, 322 F.3d at 583; *see also Johnson v. Mississippi*, 486 U.S 578, 587 (1988) (to be deemed adequate, a state procedural rule must be "strictly or regularly followed" (internal quotation marks omitted)).

Procedural default is an affirmative defense, and the State bears the ultimate burden of proving it. *Bennett*, 322 F.3d at 585-86. Accordingly, the State bears the burden of demonstrating "that the state procedural rule has been regularly and consistently applied." *Id.* at 586. However, the petitioner bears a threshold burden of "asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the

- 8 -

rule." *Id.* at 586.

Because the doctrine of procedural default is based on comity rather than jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, courts will do so only if the petitioner demonstrates cause and prejudice, or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate prejudice, the petitioner must show that the constitutional violations alleged in his § 2254 Petition "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis omitted). To establish that a fundamental miscarriage of justice would occur if a claim were not heard on the merits in federal court, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To do so, the petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial." *Cook v. Schriro*, 538 F.3d 1000, 1028 (9th Cir. 2008).

**III. Discussion**

In their Limited Answer, Respondents argue that Petitioner's claims are procedurally defaulted because the Arizona Court of Appeals dismissed his Petition for Review as untimely. Respondents further argue that Petitioner has not shown cause and prejudice or a miscarriage of justice to excuse the procedural default. In his Reply, Petitioner argues that the untimeliness of his Petition for Review to the Arizona Court of Appeals was caused by the Pima County Superior Court's delay in sending a copy of the PCR ruling to Petitioner and his PCR attorney.

. . . .

## A.    Fair Presentation

In Claim 1(a) of his § 2254 Petition, Petitioner argues that trial counsel rendered ineffective assistance by advising Petitioner that the State would ask the sentencing court for a mitigated sentence as part of Petitioner's plea agreement.  (Doc. 1 at 7.)  Petitioner argued in his PCR Petition that he would not have accepted the plea if not for his belief that the State had agreed to request a mitigated sentence.  (Doc. 14-1 at 5.)  He also raised an ineffective assistance of counsel claim and alerted the trial court to the federal constitutional basis of the claim by citing *Strickland v. Washington*, 466 U.S. 668 (1984).  (Doc. 14-1 at 7-8.)  Petitioner did not clearly premise the ineffective assistance of counsel claim on trial counsel's advice concerning the plea; however, Petitioner argued in his pro se Motion to Supplement that trial counsel fell below a competent standard of representation by advising Petitioner that the State had promised to request a mitigated sentence of 10.5 years, and that this advice induced Petitioner to accept the plea.  (Doc. 1-1 at 79.)  Petitioner also raised these arguments in his pro se Supplement to the PCR Petition.  (Doc. 14-1 at 34-35.)  *See Clemmons v. Delo*, 124 F.3d 944, 948-49 (8th Cir. 1997) (finding fair presentation where post-conviction counsel omitted claims from post-conviction petition but petitioner filed a pro se supplemental brief bringing the claims to the attention of the state court).  Furthermore, Petitioner raised this claim in his Petition for Review, citing to the Sixth Amendment and *Hill v. Lockhart*, 474 U.S. 52 (1985).  (*See* Doc. 14-2 at 10-14, 16-18.)  The Court finds that Petitioner fairly presented Claim 1(a).  Respondent does not argue otherwise.

In Claim 1(b) of his § 2254 Petition, Petitioner argues that his trial counsel rendered ineffective assistance by failing to move to withdraw Petitioner's plea and failing to move to suppress evidence pursuant to *Jardines*.  (Doc. 1 at 7-8.)  Petitioner fairly presented this claim in his PCR Petition (*see* Doc. 14-1 at 7-10) and in his Petition for Review (*see* Doc. 14-2 at 14-16).  Respondent does not argue otherwise.

In Claim 2 of his § 2254 Petition, Petitioner argues that the State violated the terms of his plea agreement by failing to advise the sentencing court of his cooperation,

presenting only aggravating allegations, and requesting the maximum sentence of 18 years. (Doc. 1 at 9-10.) Petitioner further argues that, even though he entered the plea agreement based on his understanding that the State would request a mitigated sentence and he had been told by Judge Miller that he could ask to withdraw from the plea agreement if he felt the State did not meet its end of the bargain, Judge Rash denied his request to withdraw from the plea agreement. (*Id.* at 10-11.) Petitioner fairly presented this claim in his PCR Petition (*see* Doc. 14-1 at 5-7) and in his Petition for Review (*see* Doc. 14-2 at 3, 5-6, 9-18).[7] Respondent does not argue otherwise.

In Claim 3 of his § 2254 Petition, Petitioner argues that he should have been allowed to withdraw from his plea agreement and move to suppress evidence based on *Jardines*. (Doc. 1 at 12-16.) Petitioner fairly presented this claim in his PCR Petition (*see* Doc. 14-1 at 7-10) and in his Petition for Review (*see* Doc. 14-2 at 3-5, 15-16, 19-25). Respondent does not argue otherwise.

## B. Independent and Adequate State Procedural Bar

The trial court denied Petitioner's claims on the merits in a reasoned decision. (Doc. 1-1 at 81-82.) The Arizona Court of Appeals thereafter dismissed Petitioner's Petition for Review in a decision that reads, in its entirety:

> Pursuant to Motion to Extend Time to File a Petition for Review of Petitioner's PCR Filed and Ruled On In The Pima County Superior Court, and this court being without jurisdiction to rule on said motion, ORDERED: The above-entitled petition for review is DISMISSED.

(Doc. 14-2 at 38.)

Respondent assumes that the Court of Appeals denied Petitioner's Petition for Review as untimely. However, the Court of Appeals did not expressly rule that the

---

[7]     Although the Petition for Review focuses on the failure of defense counsel to adequately advise Petitioner regarding the effects of the plea agreement, Petitioner clearly argued that the State failed to fulfill its promise to request a mitigated sentence, that Petitioner would not have agreed to the plea agreement if not for that promise, and that Petitioner should have been allowed to withdraw from the plea agreement when the State failed to fulfill the promise. (Doc. 14-2 at 3, 5-6, 9-13.) Petitioner also cited federal law for the proposition that a plea which is not knowing and voluntary violates due process. (*Id.* at 12-13.)

Petition for Review was untimely. Instead, the Court of Appeals summarily dismissed the Petition for Review without explanation or citation to authority after finding that it lacked jurisdiction to rule on Petitioner's Motion to Extend Time.

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim" are presumed to "rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Castellanos v. Small*, 766 F.3d 1137, 1145 (9th Cir. 2014) (a state appellate court's "summary denial of discretionary review, which generally does not state a reason for that denial, is not a 'reasoned' decision under AEDPA, and we must 'look through' that unexplained decision to the last court to have provided a 'reasoned' decision."). Because the trial court rejected Petitioner's claims in a reasoned decision, and the Arizona Court of Appeals summarily dismissed Petitioner's Petition for Review without explanation or citation to authority, this Court presumes that the latter court's unexplained order rested upon the same grounds as the trial court's decision.

"[S]trong evidence can refute" the presumption that federal courts will look through an unexplained order to the last reasoned state court decision. *Ylst*, 501 U.S. at 804. For example, "it might be shown that, even though the last reasoned state-court opinion had relied upon a federal ground, the later appeal to the court that issued the unexplained order was plainly out of time, and that the latter court did not ordinarily waive such a procedural default without saying so." *Id.* The Arizona Rules of Criminal Procedure require petitions for review to be filed in the Arizona Court of Appeals no later than 30 days after the entry of the trial court's final decision on a Rule 32 petition. Ariz. R. Crim. P. 32.9(c)(1)(A). Petitioner's Petition for Review was filed more than 30 days after the entry of the trial court's decision denying his PCR Petition. The untimeliness of the Petition for Review, and the Arizona Court of Appeals' reference to Petitioner's Motion to Extend Time, lend support to Respondent's assumption that the Arizona Court of Appeals dismissed the Petition for Review on timeliness grounds. However, for the reasons that follow, these circumstances fall short of the "strong evidence" necessary to

rebut the presumption that this Court should look through the Arizona Court of Appeals' unexplained dismissal to the trial court's reasoned decision. *Ylst*, 501 U.S. at 804.

Rule 32.9(c)(3) of the Arizona Rules of Criminal Procedure requires that motions for extension of time to file petitions for review be filed in the trial court. However, the Arizona Court of Appeals routinely reviews trial courts' adjudications of such motions for abuse of discretion. *See, e.g.*, *Arizona v. Morales*, No. 2 CA-CR 2014-0078-PR, 2014 WL 1903164, at *1 (Ariz. App. May 12, 2014) (reviewing for abuse of discretion trial court's denial of request for leave to file untimely petition for review); *Arizona v. Henry*, No. 2 CA-CR 2007-0242-PR, 2008 WL 4606543, at *1-2 (Ariz. App. Feb. 28, 2008) (same); *cf. Arizona v. Samaniego*, No. 2 CA-CR 2013-0361-PR, 2014 WL 249565, at *2 (Ariz. App. Jan. 22, 2014) (considering whether trial court abused its discretion in denying untimely motion for reconsideration); *Arizona v. Mesa*, No. 2 CA-CR 2011-0171-PR, 2011 WL 4379428, at *6 (Ariz. App. Sept. 16, 2011) (same); *see also Arizona v. Grange*, 635 P.2d 843, 845 (Ariz. 1981) (finding valid reason for noncompliance with timing requirements of Rule 32.9); *Arizona v. Bann*, 2010 WL 1493109, at *3 (Ariz. App. Apr. 14, 2010) (remanding for trial court to determine whether petitioner "received timely notice" of order and, "if he did not, to grant him an additional extension of time"). It is unclear why, in Petitioner's case, the Arizona Court of Appeals did not review for abuse of discretion the trial court's denial of Petitioner's request for an extension of time to file a petition for review.

The trial court's unexplained denial of Petitioner's request for an extension of time is equally perplexing. The Arizona Supreme Court has held that the time limits of Rule 32.9 "are not jurisdictional," and that a late filing may be allowed "if a valid reason for non-compliance" with the time limits is present. *Arizona v. Pope*, 635 P.2d 846, 848 (Ariz. 1981) (internal quotation marks and alteration omitted); *see also Arizona v Padilla*, 859 P.2d 191, 193 (Ariz. App. 1993) (taking jurisdiction of untimely petition for review). Delayed receipt of a mailed copy of a ruling is a valid reason for non-compliance with the time limits of Rule 32.9. *See Arizona v. Vasquez*, 690 P.2d 1240, 1242 (Ariz. App.

1  1984); *see also Bann*, 2010 WL 1493109, at *2-3 (lack of notice of a deadline constitutes

2  a valid reason for failing to meet the deadline). In fact, Arizona courts have determined

3  that the applicable time periods of Rule 32.9 commence "upon the mailing by the clerk of

4  the trial court's rulings." *Smith v. Ryan*, No. CV 13-00008-TUC-BPV, 2014 WL

5  2452902, at *4 (D. Ariz. June 2, 2014) (citing *Arizona v. Byers*, 613 P.2d 299, 301 (Ariz.

6  App. 1980), *overruled on other grounds by Pope*, 635 P.2d at 849); *see also Arizona v.*

7  *Zuniga*, 786 P.2d 956, 957 (Ariz. 1990).[8]

8       Petitioner properly filed with the trial court a motion to extend the time for filing a

9  petition for review. *See* Ariz. R. Crim. P. 32.9(c)(3). In the Motion, Petitioner explained

10  that he did not receive a copy of the court's PCR ruling until June 1, 2014, and he

11  summarized the contents of the letter he had received from his PCR attorney.

12  Accordingly, Petitioner presented a valid reason for non-compliance with Rule 32.9's

13  time limits: namely, that neither he nor his PCR counsel had received timely notice of the

14  PCR ruling, and that his PCR counsel notified him of the ruling after the 30-day deadline

15  for filing a petition for review had already expired. Notwithstanding the fact that

16  Petitioner had followed the procedurally appropriate mechanism for seeking an extension

17  of time and had presented a valid reason for delay, the trial court denied Petitioner's

18  Motion for Extension of Time without explanation and without citation to any authority

19  or evidence.

20       Respondent argues that the trial court's summary denial of Petitioner's Motion for

21  Extension of Time "suggests the trial court had, in fact, sent counsel a copy of the [PCR]

22  ruling," and that "[t]o assume otherwise forces the untenable conclusion the trial court

23  deliberately obstructed Petitioner's access to the courts due to its own procedural failure."

24  (Doc. 14 at 7 n.2.) Respondent cites no authority to support this argument, and this Court

25  disagrees that it is required to assume that the trial court's summary denial of Petitioner's

26

27       [8]      "In the absence of an affirmative showing of a mailing date," Arizona courts presume that "the mailing occurred on the date the order was entered." *Smith*,

28  2014 WL 2452902, at *4. However, this presumption is rebuttable. *Ta Yoat Ni v. Ryan*, No. CV-13-01155-PHX-PGR (FJM), 2014 WL 2569139, at *8 (D. Ariz. June 9, 2014).

Motion for Extension of Time is equivalent to a factual finding that the trial court timely sent PCR counsel a copy of the PCR ruling. If the trial court had made that factual finding, it could easily have so stated. Furthermore, if evidence exists to support a conclusion that the trial court timely mailed a copy of the PCR ruling, Respondent is in the best position to identify that evidence and bring it to this Court's attention. Respondent has failed to do so. The only relevant evidence in the record indicates that Petitioner's PCR counsel did not receive a copy of the PCR ruling until May 30, 2014, and that Petitioner did not receive a copy of the ruling until June 1, 2014.

Even if the Court were to attribute the delayed notice of the PCR ruling to the office of Petitioner's PCR counsel, as Respondent urges, the Arizona Supreme Court has held that the failure of an attorney's legal secretary to notify the attorney of a ruling is a valid reason for delay in petitioning for review of that ruling. *See Pope*, 635 P.2d at 849. Furthermore, as discussed in more detail below, Petitioner had a constitutional right to the effective assistance of counsel during his of-right Rule 32 proceedings, *Pruett*, 912 P.2d at 1359-60, and PCR counsel had a duty to notify Petitioner of the resolution of those proceedings in a timely fashion so as to preserve Petitioner's ability to seek review, *Smith v. State of Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 434 (6th Cir. 2006).

A state court's invocation of a state procedural rule is not adequate to preclude federal review where the record reveals that the petitioner complied with the rule invoked by the state. *See Burrus v. Gonzalez*, 172 F.3d 55, at *1 (9th Cir. Mar. 2, 1999) (mem.); *see also NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 296-302 (1964). Here, even if the Court were to interpret the Arizona Court of Appeals' ambiguous order as invoking a timeliness bar, the record shows that Petitioner complied with state-law requirements for seeking an extension of time to file a petition for review of the trial court's PCR ruling, and he presented a valid reason for delay.[9] The trial court provided no

---

[9] The Court acknowledges that Petitioner filed his Petition for Review more than 30 days after he received actual notice of the PCR ruling. However, he filed for an extension of time within days of receiving notice of the ruling, and he filed the Petition for Review within 30 days of the trial court's ruling on the motion for extension of time.

explanation and no citation to facts or authority to support its denial of Petitioner's Motion for Extension of Time. Similarly, the Court of Appeals provided no explanation and no citation to facts or authority to support its finding that it lacked jurisdiction to review the trial court's denial of the time extension. Under the circumstances, the Court cannot conclude that the Arizona Court of Appeals' unexplained dismissal of Petitioner's Petition for Review was grounded on an independent and adequate state procedural rule. Accordingly, the Court finds that Petitioner's claims are not procedurally defaulted.

### C. Cause and Prejudice

Even if Petitioner's claims are procedurally defaulted—which the Court finds they are not—Petitioner has established cause and prejudice to overcome any procedural default.[10]

To establish cause to excuse the procedural default, Petitioner must show that "some objective factor" that is "external" to him and "cannot fairly be attributed to him" impeded his ability to comply with the State's procedural rule. *See Coleman*, 501 U.S. at 753; *see also Murray*, 477 U.S. at 488. Petitioner has presented evidence indicating that the trial court's delay in mailing a copy of the PCR ruling, and its subsequent denial of Petitioner's Motion for Extension of Time, impeded Petitioner's ability to comply with Rule 32.9's 30-day deadline for filing a Petition for Review. Once Petitioner received notice of the PCR ruling, he diligently attempted to obtain an extension of time to file a petition for review, and he did so through the proper state procedural mechanisms; nevertheless, the trial court thwarted his attempt without explanation. *See Murray*, 477 U.S. at 488 ("interference by officials" which "made compliance" with a state procedural rule "impracticable" constitutes cause). The Court finds that Petitioner has sufficiently shown that his ability to comply with the timing requirements of Rule 32.9 of the Arizona Rules of Criminal Procedure was impeded by external factors that cannot fairly be attributed to him.

---

[10] Petitioner does not assert innocence and thus cannot establish that a fundamental miscarriage of justice would occur if his claims were not heard on the merits in federal court. *See Schlup*, 513 U.S. at 327.

Even if PCR counsel, rather than the trial court, were responsible for the delay in notifying Petitioner of the PCR ruling—a factual finding that the record does not support—Respondent is incorrect that the errors of PCR counsel are attributable to Petitioner and thus cannot establish cause to excuse a procedural default. Respondent cites *Smith v. Baldwin*, in which the Ninth Circuit noted that there is no constitutional right to an attorney in state post-conviction proceedings and, therefore, that attorney ineffectiveness in such proceedings is not considered cause for the purposes of excusing a procedural default. 510 F.3d 1127, 1146-47 (9th Cir. 2007).[11] However, in the present case, as a result of his guilty plea, Petitioner's Rule 32 proceedings were of-right proceedings during which Petitioner had a constitutional right to effective assistance of counsel. *See Pruett*, 912 P.2d at 1359-60 (a pleading defendant "is constitutionally entitled to the effective assistance of counsel in his first [of-right] petition for post-conviction relief"). Constitutionally ineffective assistance of counsel constitutes "cause for a procedural default." *Murray*, 477 U.S. at 488; *see also Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000). Failing to notify a client of an appealable order prior to expiration of the deadline for appealing that order may constitute ineffective assistance of counsel. *See Smith*, 463 F.3d at 434-35 (holding that counsel's delayed notice to client of appealable decision constituted ineffective assistance); *see also Strickland*, 466 U.S. at 688 (counsel has a duty "to keep the defendant informed of important developments").[12]

---

[11] The Supreme Court established a limited exception to this rule in *Martinez v. Ryan*, holding that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. 1, 18 (2012). A *Martinez* analysis in unnecessary in the present case because, as discussed above, Petitioner had a constitutional right to counsel during his of-right Rule 32 proceedings.

[12] Ineffective assistance of counsel claims must themselves be exhausted before they can establish cause for the procedural default of other claims. *Murray*, 477 U.S. at 489; *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). It does not appear that Petitioner has exhausted an ineffective assistance of of-right PCR counsel claim. However, neither party has addressed that issue, nor have the parties addressed whether Petitioner could satisfy the cause-and-prejudice standard with respect to such a claim. *See Edwards*, 529 U.S. at 453.

To establish prejudice, Petitioner must show that the constitutional violations alleged in his § 2254 Petition "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (emphasis omitted) (quoting *Frady*, 456 U.S. at 170).

With respect to his claim that trial counsel rendered ineffective assistance by providing Petitioner with erroneous advice regarding the effects of his plea agreement, the prejudice inquiry for purposes of procedural default is the same as the prejudice inquiry under *Strickland*. *See Vansickel v. White*, 166 F.3d 953, 958-59 (9th Cir. 1999) (applying *Strickland* prejudice inquiry in evaluating cause and prejudice to excuse procedural default). Where "a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To show prejudice on a claim of deficient advice during the plea process, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. Petitioner has made that showing—at his sentencing hearing, he clearly stated that he would not have agreed to the plea agreement if not for his understanding that the prosecution would request a mitigated sentence, and he specifically asked to withdraw from the plea agreement. (Doc. 1-1 at 43-44, 51-52.)

To show prejudice with respect to his claim that trial counsel rendered ineffective assistance by failing to move to suppress evidence, Petitioner must show that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Petitioner has shown, based on *Jardines*, that the warrantless canine sniff of the curtilage of his home likely violated the Fourth Amendment. Probable cause to issue a search warrant for Petitioner's home was based in part on the results of the dog sniff. (Doc. 1-1 at 54-57.) Accordingly, Petitioner has demonstrated a

reasonable probability that, had trial counsel filed a motion to suppress, the evidence obtained as a result of the search warrant would have been excluded as the fruit of an illegal search. Because that evidence appears to have formed the basis of the charges against Petitioner, Petitioner has also demonstrated a reasonable probability that, without the excludable evidence, there would have been insufficient evidence for a conviction.

There is some tension between Petitioner's argument that his plea agreement was not knowing and voluntary and his argument that the prosecution breached the plea agreement. The former argument requires Petitioner to show that he mistakenly believed that the prosecution had promised to request a mitigated sentence, and that he would not have entered his plea agreement if not for that mistaken belief. To establish prejudice on that claim, Petitioner must show that he would not have pled guilty if not for his belief that the prosecution had promised to request a mitigated sentence. As discussed above, Petitioner has made that showing. The latter argument requires Petitioner to show that the prosecution promised to request a mitigated sentence of 10.5 years and then failed to uphold that promise. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). In its PCR ruling, the trial court stated that it would not have imposed a mitigated sentence even if the prosecution had requested it. Although the trial court's statement weighs against a finding of prejudice on a claim that the prosecution breached the plea agreement, under similar circumstances the Supreme Court has remanded for the state court to either allow withdrawal from the plea or require specific performance by the prosecution at a sentencing hearing before a different judge. *See id.* at 262-63 (remanding even though sentencing judge had stated that prosecutor's recommendation did not influence him). Accordingly, Petitioner has shown prejudice on this claim, because if he were to prove the claim, he would be entitled to either withdraw from his plea or benefit from specific performance of the prosecution's alleged promise at a resentencing hearing before a different judge.

It is not clear that Petitioner can show a federal constitutional violation with respect to his final claim that he should have been allowed to withdraw from his plea and file a motion to suppress under *Jardines*. However, it appears that the prejudice flowing from such a claim is equivalent to the prejudice flowing from the ineffective assistance of counsel claim in Claim 1(b). Accordingly, the Court finds that Petitioner has adequately shown prejudice for purposes of the cause and prejudice inquiry.

### D. Conclusion

The Court finds that Petitioner fairly presented his federal constitutional claims to the state courts and that the claims are not procedurally defaulted because the Arizona Court of Appeals' summary dismissal of the claims did not rest on an independent and adequate state procedural bar. In the alternative, the Court finds that Petitioner has sufficiently demonstrated cause and prejudice to excuse any procedural default.

Accordingly,

**IT IS ORDERED** that Respondent's request that the § 2254 Petition be dismissed as procedurally defaulted (Doc. 14 at 1, 9) is **denied**.

**IT IS FURTHER ORDERED** that Respondent shall file an Answer addressing the merits of Petitioner's habeas claims on or before **March 16, 2018**. The Answer must fully comply with all of the requirements of Rule 5 of the Rules Governing 2254 Cases. Respondent shall attach to the Answer all available relevant transcripts, including the full transcript of Petitioner's sentencing hearing. If a transcript cannot be obtained, Respondent must submit a narrative summary of the evidence. *See* Rule 5(c) of the Rules Governing 2254 Cases.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

**IT IS FURTHER ORDERED** that Petitioner may file a Reply to Respondent's Answer on or before **April 16, 2018**.

Dated this 6th day of February, 2018.

Honorable Rosemary Márquez
United States District Judge